SHIVERS, Judge.
This is an appeal from a dismissal with prejudice of counts I through IV of appellants’ fourth amended complaint and from a final judgment denying appellants damages in quantum meruit for alleged unpaid compensation owed them. We affirm the denial of damages in quantum meruit and *1293 the dismissal of counts I through III and we reverse the dismissal of count IV and remand for further proceedings.
Appellee Emmer Development Corporation (EDC) is a building construction business which handles projects throughout the state. Appellants McGee, Schram, and Smith worked for EDC from around 1971 until 1985 except for Smith who left in 1984.[1]
The compensation summaries prepared by EDC reflect a substantial difference between the average annual total compensation package given each appellant and the compensation package given to each of them in their last year with EDC. In their respective last years of employment with EDC, McGee was paid a total of $14,052, Schram was paid a total of $15,673, and Smith was paid a total of $173,077. The respective approximate average annual compensation of the three appellants between 1978 and 1984 was, for McGee, $191,000 per year for Schram, $168,000 per year, and for Smith $156,000 per year. Each of appellants’ compensation during those years included bonus payments usually double or more than double their base salaries.[2]
Appellants’ bonuses were paid pursuant to an orally agreed upon profit sharing plan implemented by Emmer, the president of EDC, during the period from 1973 until July 12, 1977, while the terms of a formal stock purchase agreement or alternative fixed profit sharing plan were being considered. On July 12, 1977, Emmer wrote a letter to each of the appellants cancelling the profit sharing plan and stating that he would consider possible alternatives. Em-mer testified that after he sent the three letters terminating the profit sharing plan, he spoke with Smith and explained to him that a discretionary bonus would be used instead of the profit sharing plan. All three appellants, McGee, Schram, and Smith testified as to their awareness of the new discretionary bonus plan.
Much evidence, both documentary and testimonial, was considered by the trial court regarding EDC income, profits, liabilities, employee compensation, and the like. Joanne Kotait, EDC vice president and treasurer at the time of trial, testified about EDC profits and losses and prepared a financial statement outlining EDC profits and losses and bonus payments, bases, and balances for the three appellants in the fiscal year ending February 28, 1985. EDC’s apparent, disputed practice was to pay appellants each approximately 10% of the corporate profits that were subject to be included in the bases. Kotait’s testimony and the financial statement indicated that in light of corporate profits and the bonus amounts already paid to appellants, each of the appellants was substantially overpaid bonus compensation[3].
Other jurisdictions have most closely examined the issue of the actionability of withheld bonus payments. In Simon v. Riblet Tramway Company, 8 Wash.App. 289, 505 P.2d 1291 (1973) the court held that payment of an employer’s discretion bonus over a ten year period ripened into an implied contract. However the bonus payments were never tied to profits as they were in the instant case. The court in Powell v. Republic Creosoting Company, 172 Wash. 155, 19 P.2d 919 (1933), precedent to Simon, found an implied contract to pay plaintiff a bonus but the court acknowledged that the bonus for a given period is not necessarily as high as preceding periods where the bonus is tied to profits. The award of unpaid bonuses in *1294 Thatcher v. Wasatch Chemical Company, 29 Utah 2d 189, 507 P.2d 365 (1973) turned on exactly that where the court found the bonuses owing in the year the employer had high profits. These decisions are persuasive and tend to support appellants’ contention that they were entitled to continue participation in the profit sharing plan through their respective departures from EDC. However, we find no basis for disturbing the trial court’s denial of appellants’ quantum meruit claim because there exists in the record competent, substantial evidence of EDC profits, losses and bonus payments in the fiscal year ending February 28, 1985 to support it. See Dean v. Blank, 267 So.2d 670 (Fla. 4th DCA 1972).
Count IV of the fourth amended complaint alleges an agreement between appellants and Emmer concerning a conveyance of land. Normally, the statute of frauds defense, section 725.01, Fla.Stat. (1987), would act to bar a cause of action on such an allegation and the dismissal in this case would be justified. However, count IV contains an allegation that after Emmer sold the property he distributed 10% of the down payment to each of the appellants pursuant to their alleged agreement to receive 10% each of the entire proceeds from either sale or development of the property. “Partial or complete performance removes an agreement from the statute of frauds irrespective of whether such an agreement contains as the subject the conveyance of land.” Futch v. Head, 511 So.2d 314, 319 (Fla. 1st DCA 1987). Therefore, appellants’ allegations take the agreement outside the statute of frauds which is the only defense raised in appel-lees’ motion to dismiss. We reverse the trial court’s dismissal of count IV of the fourth amended complaint and remand for further proceedings.
Appellant Smith’s allegation of fraud is contained in count I of the fourth amended complaint which was dismissed by the trial court. Smith essentially alleged that Emmer deceived him into thinking he received bonus compensation that he actually did not receive. This issue is entwined with the trial court’s findings regarding appellants’ asserted rights to further bonus compensation discussed above. Evidence of Smith’s bonus compensation was before the trial court on the quantum meruit claim and it found Smith due nothing. We have found that the record supports this finding and thus Smith’s allegation of fraud, as posed, is moot.
AFFIRMED in part and REVERSED and REMANDED in part.
BARFIELD, J., concurs.
ZEHMER, J., concurs and dissents, with opinion.

.McGee was hired as a controller with a base beginning salary of $25,000 per year. McGee’s total compensation over his period of employment with EDC was $1,674 million. Schram was hired as an in-house attorney at $13,000 per year. His total compensation over the period of employment with EDC was $1,473 million. Smith was hired as an assistant to the president at $15,600 per year. His total compensation over his period of employment with EDC was $1,316 million.

. E.g., in 1982, McGee’s compensation summary indicates a base salary of $52,000 and a bonus payment of $236,878.

. Kotait’s statement indicates overpayments to McGee of $10,068, to Schram of $19,929 and to Smith of $65,289.